Brian S. Batterton            Iacobucci vs Town of Bonneau, et al.            October 4, 2018

1   you have determined to be false or inaccurate;
2   right?
3               MR. CLEMENT:  Objection to form.
4        A      Well, if we dug out her deposition
5   testimony and started comparing it to the video,
6   I may be able to, but I don't know.
7        Q      And you haven't done that in this
8   case; right?
9        A      I have not specifically gone line by
10  line, for example, and second by second on the
11  video because I'm familiar enough with the facts
12  of the case from watching the video numerous
13  times that assertions that were made in the
14  deposition don't change my opinion, even if you
15  were to assume they were true, don't change my
16  opinion of how Chief Fuda, as a reasonable
17  officer, or how another reasonable officer on
18  that situation would have viewed that totality of
19  the circumstances with respect to the DUI charge,
20  the speeding charge, the drug charge, and the gun
21  charge.
22       Q      Well, I have some questions about that
23  too, but before I get to those, I just want to --
24  have you done anything to fact check anything
25  Mr. Fuda said in his deposition to determine

**115**

Brian S. Batterton        Iacobucci vs Town of Bonneau, et al.        October 4, 2018

```
 1   whether there were any inaccuracies in his
 2   testimony?
 3        A    I looked at the, for lack of a better
 4   term, the enhanced video or the video with the
 5   metadata which corroborated his 57-in-a-45
 6   statement.  What else?  I don't know how the
 7   court procedure works there, but I wasn't
 8   retained as a court administration expert.  I was
 9   dealing with the police practices aspect of it.
10        Q    And those police practices in
11   South Carolina are dictated in part by the way
12   the court system works in South Carolina; right?
13             MR. PLYLER:  Object to the form.
14             You can answer.
15        A    Well, I'm looking at pertaining to the
16   arrest, so the court system portion is kind of a
17   different aspect as far as when you were talking
18   about the -- how you would immediately dismiss a
19   case.
20        Q    Do you believe that there are any
21   aspects that pertain to the appropriateness of
22   Mr. Fuda's behavior that rely on his credibility
23   in this case?
24        A    Well, a police officer's credibility
25   is important.
```

**116**

Electronically signed by Jennifer Hamon (501-191-664-2767)        841734ee-9db8-44a5-9d5d-d118afac36a1

2:18-cv-00152-DCN  Date Filed 11/19/18  Entry Number 67-4  Page 3 of 5

Brian S. Batterton  Iacobucci vs Town of Bonneau, et al.  October 4, 2018

```
 1      Q    But you have reviewed it, and it did
 2 constitute the basis of many of your opinions in
 3 this case; is that right?
 4      A    That's correct.
 5      Q    During your review of the video, did
 6 you observe Chief Fuda to employ several field
 7 sobriety tests?
 8      A    Yes, I did.
 9      Q    Is field sobriety test a term of art
10 in the field of policing?
11      A    Yes, it is.
12      Q    Help us understand what it means.
13      A    The standardized field sobriety test
14 is a NHTSA certification, which is the National
15 Highway Safety Transportation people.  That
16 has -- it has some scientific backing to it, some
17 studies that were done.  And if a person performs
18 those tests or conducts the tests and they
19 exhibit -- the suspect, violator, exhibits
20 certain numbers of clues, then it's said that
21 there's a particular percentage of certainty, or
22 likelihood is a better word, that they are over a
23 0.08 for the state-administered test.  So that's
24 the -- the down dirty of standardized field
25 sobriety tests.
```

**184**

Brian S. Batterton    Iacobucci vs Town of Bonneau, et al.    October 4, 2018

```
 1        Q    So it's testing certain motor
 2   functions and cognitive functions of the suspect;
 3   correct?
 4        A    Right.  It makes them divide their
 5   attention --
 6        Q    And trying to --
 7        A    -- to listen and perform.
 8        Q    -- to see if they would be safe to
 9   operate a vehicle?
10        A    Correct.
11        Q    And you observed Chief Fuda to
12   administer at least four of these tests, field
13   sobriety tests, at the scene; correct?
14        A    Correct.  The first three are the
15   standard ones.
16        Q    And what's the fourth one?
17        A    The Romberg.
18        Q    That's the number counting thing?
19        A    Right, where she tilted her head
20   backwards and stood and counted to 30 or
21   estimated to 30.
22        Q    From your review of the video, did
23   Chief Fuda appear to administer those tests
24   correctly?  Whether or not he made the right
25   conclusions about different clues of impairment,
```

**185**

Electronically signed by Jennifer Hamon (501-191-664-2767)    841734ee-9db8-44a5-9d5d-d118afac36a1

2:18-cv-00152-DCN   Date Filed 11/19/18   Entry Number 67-4   Page 5 of 5

Brian S. Batterton   Iacobucci vs Town of Bonneau, et al.   October 4, 2018

1  did he appear to administer the tests correctly?
2      A   Yes.
3      Q   And you could see that on the video;
4  correct?
5      A   Yes.
6      Q   Would those tests that he employed and
7  the way he employed them be something a
8  reasonable officer would do when investigating a
9  potential DUI?
10     A   Yes.
11     Q   When you viewed I think you called it
12 the enhanced video, the video that shows the text
13 in addition to just the moving pictures of the
14 incident, that actually shows, purportedly, the
15 patrol vehicle's speed, the target's speed, time
16 of day, all of that sort of stuff, when you
17 reviewed that enhanced video, did you see
18 purported radar readings on the screen?
19     A   I did.
20     Q   And did the purported radar reading
21 for the target as the Plaintiff's vehicle passed,
22 did it appear to register above 45 miles per
23 hour?
24     A   Yes, it did.
25     Q   Would it be reasonable for an officer

**186**