# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| WENDY IACOBUCCI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:18-cv-00152-DCN-BM |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| TOWN OF BONNEAU, BONNEAU POLICE DEPARTMENT, and FRANCO FUDA, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter is before the court on United States Magistrate Judge Bristow Marchant's report and recommendation ("R&R") that the court grant the defendants Town of Bonneau (the "Town"), Bonneau Police Department (the "Police Department"), and Franco Fuda's ("Fuda") (collectively, "defendants") motion for summary judgment with respect to plaintiff Wendy Iacobucci's ("Iacobucci") third cause of action asserting federal claims pursuant to 28 U.S.C. § 1983 and Iacobucci's first cause of action asserting a state law claim for false arrest/imprisonment, and that the court deny the defendants' motion for summary judgment with respect to Iacobucci's remaining four state law causes of action and remand those claims to state court for disposition, ECF No. 83. For the reasons discussed below, the court adopts the R&R, grants defendants' motion for summary judgement as to Iacobucci's first and third causes of action, denies the defendants' motion for summary judgment with respect to Iacobucci's remaining four state law causes of action, and remands those claims to state court.

1

## I. BACKGROUND

The R&R ably recites the facts, and Iacobucci did not object to the R&R's recitation thereof.[1] Therefore, the court will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of its legal analysis.

This action arises out of an incident that occurred on December 31, 2015, in which Fuda, the Town's chief of police, pulled over Iacobucci's car while she was driving within the Town's jurisdiction. Fuda clocked Iacobucci's vehicle traveling 56 miles per hour as it passed his patrol car in a 45-mile-per-hour zone.[2] During the stop, Fuda discovered in the vehicle several pill bottles prescribed to individuals other than Iacobucci that contained various opioids. Additionally, Iacobucci informed Fuda that she had two firearms in her vehicle but that she could not produce a concealed weapons permit. Fuda conducted field sobriety tests, dashboard camera evidence of which shows Iacobucci performed poorly. Fuda arrested Iacobucci, who spent the night in jail and was released on bond the following day.

Iacobucci was charged with speeding, driving under the influence, violation of a concealed weapons law, and three counts of drug possession. On March 8, 2016, Fuda received toxicology results that indicated Iacobucci did not have any drugs in her system when she was arrested. The following day, Fuda informed Iacobucci's lawyer of the

---

[1] Although Iacobucci objects generally to the R&R's conclusions based on the facts, she does not object to the facts themselves as they are laid out in the R&R. See ECF No. 84.
[2] Although Iacobucci asserts that the radar gun had not been properly certified since 2003, this fact is immaterial to resolution of the current motions for the reasons discussed below with respect to probable cause.

negative toxicology results. One year later, on March 14, 2017, all of Iacobucci's charges were dropped.

In her second amended complaint, the operative complaint before the court, Iacobucci alleges state and federal claims against the Town, the Police Department, and Fuda. Specifically, Iacobucci asserts six causes of action: (1) a state law action for wrongful arrest/false imprisonment, (2) a state law action malicious prosecution, (3) an action under 28 U.S.C § 1983 for violation of her civil rights, (4) a state law action for negligence, (5) a state law action for negligent hiring, and (6) an action for a declaratory judgment under the South Carolina Freedom of Information Act, S.C. Code Ann. § 30-4-10, et. seq. Under her sole federal cause of action, Iacobacci alleges five violations of her civil rights: (1) an unlawful seizure, (2) unlawful discrimination, (3) malicious prosecution, (4) a violation of due process under Brady,[3] and (5) a violation of her right to a speedy trial.[4]

On May 29, 2019, the Magistrate Judge issued an R&R, recommending that this court grant defendants' motion for summary judgment with respect to Iacobucci's first and third causes of action and remand the remaining claims to state court, ECF No. 83. Iacobucci filed objections to the R&R on June 5, 2019, ECF No. 84. On June 19, 2019, Fuda, as well as the Town and the Police Department, filed responses to those objections, ECF Nos. 85 and 86, respectively, to which Iacobucci replied, ECF No. 87. The matter is now ripe for review.

---

[3] Brady v. Maryland, 373 U.S. 83 (1963).
[4] The R&R disposed of Iacobucci's claim based on a violation of her speedy trial rights on the basis that such a right applies only to criminal prosecutions brought by the United States. Because Iacobucci did not object to this finding, the court need not address it further.

## II. STANDARD

### A. R&R

The Magistrate Judge makes only a recommendation to the court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court. Id. at 270-71. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

### B. Motion for Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact." Major v. Greenville Hous. Auth., 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012). Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1.

**III. DISCUSSION**

Iacobucci objects to the R&R on three grounds. First, she objects to the R&R's findings generally, contending that they are "based on factual conclusions reserved for the jury to decide." ECF No. 84 at 1. Within this general objection, Iacobucci specifically cites to eight findings of the Magistrate Judge, which she claims improperly determine issues of fact reserved for the jury. Although this objection borders on generalized and conclusory, the court will interpret Iacobucci's first objection as several objections to specific findings based on her specific citations to the R&R.[5] Four of these specific findings relate to probable cause, which the court will address in one section. The other four findings to which Iacobucci specifically points concern distinct arguments and will be addressed in turn. Second, Iacobucci objects to the R&R on the basis that it failed to consider her argument that Fuda was a final policy maker whose actions could be imputed to the Town. Finally, Iacobucci objects to the R&R because, she contends, it ignored certain persons' admissions that a right at issue was clearly established. Because the court finds each of Iacobucci's objections without merit, it adopts the R&R.

**A. First Objection**

**a. Probable Cause**

Iacobucci objects to a number of the R&R's findings, which, taken together, are tantamount to an objection to the R&R's conclusion that probable cause existed for

---

[5] "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized . . . ." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing 28 § U.S.C. 636(b)(1)).

Iacobucci's arrest.[6] In short, Iacobucci argues that the issue of probable cause should be left for determination by a jury. Under these circumstances, however, no reasonable jury could find that probable cause for Iacobucci's arrest was lacking. Probable cause is an element necessary to Iacobucci's first cause of action for wrongful arrest and to her wrongful seizure claim under her third cause of action for a violation of her federal rights. Therefore, because there is no genuine issue of material fact as to the existence of probable cause, summary judgment is appropriate for Iacobucci's state wrongful arrest cause of action as well as her unlawful seizure claim under her § 1983 cause of action.

      Iacobucci's third cause of action asserts a claim under § 1983 that her constitutional rights were violated by the defendants when she was unlawfully seized without probable cause. A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

---

[6] Specifically, Iacobucci cites to four findings of the R&R: (1) "... that Fuda had probable cause to arrest plaintiff based on agreement with the Defendants' interpretation of the events captured on video", ECF No. 84 at 2 (citing ECF No. 83 at 7); (2) "... disregarding lack of radar certification ...", id. (citing ECF No. 83 at 10); (3) "... accepting the Defendants' interpretation of the events captured on video...", id. (citing ECF No. 83 at 14; and (4) "... disregarding contrary evidence and accepting Fuda's explanation for the basis of the unlawful drug possession charge ...", id. (citing ECF No. 83 at 18.) (internal quotation marks omitted). Because these objections are all iterations of an objection to the R&R's determination that probable cause existed for Iacobucci's arrest, the court will resolve these objections together in a single analysis of probable cause.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. An arrest is a seizure within the Fourth Amendment's protections. Robinson v. Brown, 2016 WL 4975021 at *3 (D.S.C. Sept. 19, 2016) (citing Brendlin v. California, 551 U.S. 249, 254 (2007)). Generally, a seizure is reasonable "only if based on probable cause." Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001) (quoting Dunaway v. New York, 442 U.S. 200, 213 (1979)). Therefore, Iacobucci's unlawful seizure claim under § 1983 requires a showing that she was arrested without probable cause.

Similarly, Iacobucci's state law claim for wrongful arrest includes the absence of probable cause as a necessary element. "To prevail on [a] false arrest claim [], plaintiff must establish that her arrest was not lawful." Martin v. Lott, 2010 WL 597209, at *3 (D.S.C. Feb. 16, 2010). "The fundamental question in determining whether an arrest [was] lawful is whether there was probable cause to make the arrest." Wortman v. Spartanburg, 425 S.E. 2d 18, 20 (S.C. 1992). Like her § 1983 for unlawful seizure, Iacobucci's state law claim for wrongful arrest requires a showing that Fuda lacked probable cause to arrest her. In other words, if Fuda had probable cause to arrest Iacobucci, both claims fail.

Probable cause exists where "the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000). "To determine whether probable cause existed, courts look to the totality of the circumstances known to the officers at the time of the arrest." United States v. Al-Talib, 55 F.3d 923,

931 (4th Cir. 1995) (citing Illinois v. Gates, 462 U.S. 213, 230–31 (1983)). "The determination and existence of probable cause is a practical, nontechnical conception, and it involves factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Stavis v. Reynolds, 2010 WL 1294113, at *3 (D.S.C. Mar. 5, 2010), aff'd, 2010 WL 1257344 (D.S.C. Mar. 29, 2010) (quoting Brinegar v. United States, 338 U.S. 160, 175–176 (1949)) (internal quotation marks omitted).

To survive summary judgment in an action under § 1983 for vindication of a plaintiff's Fourth Amendment rights, the plaintiff must present evidence that creates a genuine issue of material fact as to whether his arrest was made without probable cause. Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 183 (4th Cir. 1989). To do so, he must allege "a set of facts which made it unjustifiable for a reasonable officer to conclude that [the plaintiff] was violating [the relevant law]." Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002). The Magistrate Judge correctly concluded that Iacobucci has not made such a showing.

On this narrow issue of the existence of probable cause, the inquiry before the court is whether a reasonable jury could conclude that, based on the facts and circumstances known to Fuda, his finding of probable cause was unjustifiable. Like the Magistrate Judge, this court holds that no reasonable jury could so find. To be clear, this narrow inquiry does not require the court to determine whether Iacobucci in fact drove under the influence or otherwise violated the law. Instead, the court considers only the evidence that was available to the arresting officer and whether his finding of probable cause was unjustifiable. Because the court finds that it was not unjustifiable, no genuine

issue of material fact exists as to the existence of probable cause, a necessary element to the claims at issue. As such, summary judgment is appropriate.

The record is replete with evidence that justifies Fuda's finding of probable cause. Iacobucci was arrested and charged with speeding, driving under the influence, unlawful concealed weapons, and three counts of drug possession. Fuda had probable cause to arrest Iacobucci on any of these grounds. Fuda pulled over Iacobucci's vehicle because she was travelling 56 miles per hour in a 45 miles-per-hour zone. Fuda's dash cam video shows Fuda's radar confirming Iacobucci's speed of 56 miles per hour. Clearly, Fuda was reasonable in his conclusion that Iacobucci was violating the speed limit, and thus had probable cause to pull her over. Further, a violation of a simple traffic law in South Carolina gives an officer sufficient probable cause to make an arrest. See S.C. Code Ann. § 56-7-15 ("A uniform traffic ticket . . . may be used by law enforcement to arrest a person for an offense that has been freshly committed . . ."). Based on the circumstances known to Fuda, he had probable cause to arrest Iacobucci based on her speeding violation alone.

In her objections, Iacobucci argues that the speeding violation did not give Fuda probable cause because his radar was overdue for re-certification. Whether or not Fuda's radar gun was properly certified is irrelevant. The narrow inquiry this court must consider is whether Fuda had reasonable grounds to believe that Iacobucci was speeding based on the facts and circumstances within his knowledge. Whether it was properly certified or not, the radar gun gave Fuda reasonable grounds for concluding that Iacobucci was speeding. Even viewing facts in a light most favorable to Iacobucci, no

reasonable jury could hold that Fuda did not have probable cause to arrest Iacobucci for speeding.

Additionally, Fuda had probable cause to arrest Iacobucci for driving under the influence. To be clear, the issue in front of the court is not whether Iacobucci was driving under the influence of alcohol or drugs; instead, the inquiry is whether Fuda's belief that Iacobucci was driving under the influence was reasonable based on the circumstances known to him. The evidence makes clear that Fuda's belief was reasonable. During the stop, Fuda discovered several pill bottles prescribed to individuals other than Iacobucci. Further, Iacobucci admitted to Fuda that she retained the pills for personal use. Fuda conducted field sobriety tests, each of which Iacobucci failed. Based on the facts within Fuda's knowledge, his belief that Fuda was driving her vehicle under the influence of drugs was clearly reasonable. No reasonable jury could find otherwise.

Further, Fuda also had probable cause to arrest Iacobucci based on her violation of a South Carolina concealed weapon law. It is unlawful in South Carolina to keep a handgun in a vehicle without securing it in a glove compartment, console, trunk, or other closed container without a proper concealed weapons permit. S.C. Code Ann. § 16-23-20(9). Iacobucci has not contested that she had an unsecured handgun in her vehicle, nor that she did not possess a concealed weapons permit.[7] She admitted the presence of the unsecured weapon and her lack of a permit to Fuda during the stop. Clearly, Fuda's

---

[7] In contesting probable cause for the gun charge, Iacobucci does not challenge the facts presented, but instead asserts that the South Carolina law she violated was unconstitutional. Discussed below, the constitutionality of the statute has no bearing on the issue of probable cause.

belief that Iacobucci violated South Carolina law was reasonable. Given the uncontested facts, Iacobucci has presented no evidence that tend to show Fuda's finding of probable cause was unjustified.

Finally, Fuda had probable cause to arrest Iacobucci based on her possession of unlawful drugs. During the stop, Fuda found pill bottles under the driver's seat of Iacobucci's vehicle. The bottles contained the drugs Oxycodone and Hydrocodone. Iacobucci admitted to Fuda that although the drugs were not prescribed to her, she took them on occasion. These facts clearly justify Fuda's belief that Iacobucci was in violation of the drug law at issue. Therefore, Fuda had probable cause to arrest Iacobucci. Because Iacobucci has presented no evidence from which a reasonable jury could determine that Fuda acted without probable cause, summary judgment is appropriate.

### b. Gun Ordinance

Iacobucci states in her objections that the R&R "disregarded" evidence that gun ordinances similar to the South Carolina law at issue have been held unconstitutional. In fact, the R&R did consider this argument, and rightly rejected it.[8] As the R&R correctly concluded, even if this or another court declared the gun ordinance unconstitutional, the law's after-the-fact invalidity would do nothing to help Iacobucci's claim.

"Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and

---

[8] See ECF No. 83 at 14 (". . . even if the cited town was later held to be invalid . . . that would not establish that Fuda lacked probable cause to charge Plaintiff with a weapons violation at the time of the arrest.").

flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." Michigan v. DeFillippo, 443 U.S. 31, 38 (1979). Now called the "good-faith" exception, Chief Justice Warren explained its good sense: "[a] policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." Pierson v. Ray, 386 U.S. 547, 555 (1967). An officer who acts in good faith and with reliance on a then-valid law will not be liable for an unlawful seizure on the grounds that his authority to act was derived from a now-invalid law. See Michigan v. DeFillippo, 443 U.S. at 38 (citing Pierson, 386 U.S. at 557).

The constitutional validity of the gun ordinance has no bearing on whether Fuda acted with probable cause. A finding that the ordinance is unconstitutional or invalid under state law would have no retroactive effect on the existence of probable cause at the time Iacobucci was arrested. Further, the law in question is not so grossly and flagrantly unconstitutional that Fuda should have known to disregard it. Discussed above, the facts make clear that Fuda's belief that Iacobucci violated the statute was reasonable. Therefore, Fuda had sufficient probable cause for a constitutionally valid arrest. Thus, Iacobucci's objection on this ground is without merit.

### c. Discrimination Statistics

Iacobucci's first objection contains an additional citation to the R&R's finding that she failed to make out an equal protection claim. To support her claim that her equal protection rights were violated, Iacobucci presented statistics of DUI charges lodged by Fuda over a period of ten years, ECF No. 74-1. The R&R concluded that the statistics did not show a "colorable entitlement" to Iacobucci's claim. ECF No. 83 at 18.

Iacobucci now objects to this finding on the grounds that the Magistrate Judge ignored a telling subset of the statistics, a breakdown of Fuda's DUI arrests in which the arrestee had a breath alcohol content of 0.00. Specifically, her objection states that the R&R erred in "rejecting statistics showing that Fuda's 0.00 DUI arrests are typically women and minorities based on the observation that his overall DUI arrests involve a lot of white males." ECF No. 84 at 2 (emphasis in original). Iacobucci's objection mischaracterizes the R&R's finding. The Magistrate Judge did not reject the statistics of Fuda's DUI arrests; instead, he concluded that "a plain reading of these statistics fails to reveal any evidence to support [Iacobucci's] claim." ECF No. 83 at 18. The court agrees with the R&R's conclusion.

"It is appropriate to judge selective prosecution claims according to ordinary equal protection standards. Under our prior cases, these standards require petitioner to show both that the passive enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose." Wayte v. United States, 470 U.S. 598, 608–09 (1985) (internal citations omitted). "[D]iscriminatory purpose implies more than . . . intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Id. at 610 (quoting Pers. Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979)) (internal quotation marks omitted).

The court agrees with the Magistrate Judge's conclusion that the statistics do not present any evidence that Fuda's arrests have a discriminatory effect on a particular group or that Fuda was motivated by a discriminatory purpose. The court agrees with the R&R's conclusion that "[n]o evidence of a discriminatory animus against females (or

minorities) is reflected in [the] statistics." ECF No. 83 at 19. Moreover, statistical analysis of the subset of arrestees whose breath alcohol content registered as 0.00 reveals no evidence of discrimination. Of the sixteen individuals that Fuda charged with DUIs who registered a 0.00 breath alcohol content reading, eight were male, six of whom were white and two of whom were non-white, and eight were female, six of whom were white and two of whom were non-white. The court fails to see how this subset of individuals reveals any evidence that Fuda's arrests are motivated by a purpose to discriminate. Therefore, Iacobucci's objection is overruled.

### d. Brady Claim

Within Iacobucci's general objection to the R&R's finding, she specifically objects to the R&R "concluding that because the Defendants produced <u>no evidence</u> in the criminal case, and destroyed the evidence they did have, that 'Plaintiff has failed to present any evidence that Defendants withheld any material, exculpatory or otherwise, resulting in prejudice to her . . . .'" ECF No. 84 at 2 (emphasis in original). The court is perplexed by this objection. But, giving the benefit of the doubt to Iacobucci, the court will assume she is objecting on the grounds that she has presented evidence sufficient to support a <u>Brady</u> claim. Because, however, she points no evidence in this regard, the court rejects this objection.

In <u>Brady v. Maryland</u>, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment . . . ." 373 U.S. 83, 87 (1963). To show a <u>Brady</u> violation, the Petitioner must show: (1) the evidence was favorable to the accused; (2) the evidence was suppressed by the State, either willfully or inadvertently;

15

and (3) prejudice ensued. See Strickler v. Greene, 527 U.S. 263, 281–82 (1999). Brady claims, as a violation of due process, may be alleged in § 1983 claims. Kelly v. Conner, 769 F. App'x 83, 89 (4th Cir. 2019).

The court agrees with the Magistrate Judge's finding that "[t]he only material exculpatory evidence in this case . . . is the SLED toxicology test results showing that [Iacobucci] did not have any drugs in her system at the time of her arrest." ECF No. 83 at 30. The record reveals, and Iacobucci has not contested, that Fuda made this information available to Iacobucci shortly after he received it. Without a showing that defendants failed to produce some material and exculpatory evidence, Iacobucci's Brady claim must fail.[9] Therefore, this objection is without merit.

### e. Burden of Continued Prosecution

In her generalized objection to the R&R's finding, Iacobucci also objects to the R&R's finding that she was not additionally burdened by Fuda's continued prosecution of her after she received the negative toxicology reports. The court dispenses with analysis into the validity of this objection because the R&R's other finding disposes of Iacobucci's malicious prosecution claim under § 1983 notwithstanding a showing of any additional burden. The R&R concluded that Iacobucci's malicious prosecution claim

---

[9] The court does not consider Iacobucci's bare allegation that defendants "destroyed the evidence they did have." ECF No. 84 at 2. Iacobucci has not presented evidence to this effect, nor has she alleged this theory as a basis for her Brady claim before making her objections. Therefore, the court ignores this bare unsupported allegation for the purposes of resolving the summary judgment motions.

under her § 1983 cause of action must fail because Iacobucci did not show that any clearly established federal right was violated.[10] Therefore, this objection is rejected.

### B. Second Objection

In her second objection, Iacobucci alleges error in the R&R's failure to consider that Fuda was a final policy maker, such that his malicious prosecution of Iacobucci would be imputed to the Town. Notwithstanding the fact that this objection is mooted by the R&R's finding that Iacobacci's malicious prosecution claim fails for other reasons to which Iacobucci did not object, Iacobucci's contention is incorrect.

"Municipalities are not liable under respondeat superior principles for all constitutional violations of their employees simply because of the employment relationship." Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)). Rather, "municipal liability results only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Spell, 824 F.2d at 1385 (citing Monell, 436 U.S. at 694). Generally, a municipality's official policy is found in its ordinances, regulations, and other official codes committed to writing; however, "[municipal policy] may also be found in formal or informal ad hoc policy choices or decisions of municipal officials authorized to make and implement municipal policy." Id. at 1385–86 (citing Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)).

---

[10] Although Iacobucci objected to this finding of the R&R in her third objection, her objection was meritless for the reasons discussed below. Therefore, this objection is rejected as moot.

Where a plaintiff seeks to attach municipal liability to the act of a single municipal official, "liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. 469 (1986). In the Fourth Circuit, "not every decision by every municipal official will subject a municipality to § 1983 liability." Riddick v. Sch. Bd. Of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000). "Policy in this context implies most obviously and narrowly a course of action consciously chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." Spell, 824 F.2d at 1386 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)) (internal quotation marks omitted).

Here, Fuda was not acting as a final policy maker. Although Fuda is a chief of police, he was acting in the same role as any other police officer when he arrested Iacobucci. The mere fact that Fuda possessed policy-making authority will not subject the Town to liability for discretionary decisions he made outside of his role as a policy maker. Because Fuda was not acting in his policy-making role during his arrest of Iacobucci, he did not create any policy sufficient to impute his actions to the Town. Therefore, Iacobucci's second objection is overruled.

### C. Third Objection

Finally, Iacobucci objects on the following ground: "The [R&R] concludes that Fuda is entitled to qualified immunity, but ignored, and fails to consider, Fuda's, Liz Wrenn's, and Mayor Wrenn's own admission that the rights at issue were clearly established at the time of the events at issue." ECF No. 84 at 4. The R&R held that Iacobucci's malicious prosecution claim, under her § 1983 cause of action, must fail

because Fuda did not violate a "clearly established statutory or constitutional right." ECF No. 83 at 24. Objecting to this finding, Iacobucci asserts that several individuals associated with this case have admitted that the right at issue was clearly established. This objection misses the point. Determining the law is within the sole purview of the court. Whether a right is "clearly established" for the purposes of § 1983 is a purely legal question. The admissions of individuals related to this action do nothing to alter the law and their legal opinions carry no weight with the court. The court agrees with the Magistrate Judge's finding and is not persuaded by the legal opinions of the individuals cited in Iacobucci's final objection. This objection is rejected.

The R&R correctly concluded that because the summary judgment motions resolve all the federal issues in this case, remand of Iacobucci's remaining claims to state court is proper. Because Iacobucci did not object to the R&R's finding in that regard, the court need not address it.

## IV. CONCLUSION

For the foregoing reasons the court **ADOPTS** the Magistrate Judge's R&R, **GRANTS** the defendants' motion for summary judgment with respect to the plaintiff's first and third causes of action and **DISMISSES** those claims. Plaintiff's remaining state law claims are **REMANDED** for adjudication in state court.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**September 26, 2019
Charleston, South Carolina**